# UNITED STATES DISTRICT COURT
## for the
### Southern District of California

In the Matter of the Search of  
*(Briefly describe the property to be searched or identify the person by name and address)*  
Red Apple iPhone  
Model: Unknown  
Seized as FP& F: 2025255400002001 Item: 008

Case No. 24MJ9020

**FILED**  
Nov 15 2024  
CLERK, U.S. DISTRICT COURT  
SOUTHERN DISTRICT OF CALIFORNIA  
BY  s/ VeronicaCota  DEPUTY

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A-4, incorporated herein by reference.

located in the __Southern__ District of __California__, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 8 USC 1324 | Transportation of Illegal Aliens |

The application is based on these facts:  
See Attached Affidavit of Border Patrol Agent Fernando Quiroz incorporated herein by reference.

☐ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days: _____)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Fernando Quiroz*  
Applicant's signature

Border Patrol Agent Fernando Quiroz  
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by __telephone__ *(specify reliable electronic means)*.

Date: 11/14/2024

Judge's signature

City and state: El Centro, California   HON. LUPE RODRIGUEZ JR., U.S. MAGISTRATE JUDGE  
*Printed name and title*

## ATTACHMENT A-4
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-4:**	Red Apple iPhone
Model: Unknown
Seized as FP& F: 2025255400002001 Item: 008
Seized from Emilio Isaac LOPEZ
**(Target Device #4)**



The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

# ATTACHMENT B

## ITEMS TO BE SEIZED

Authorization to search the mobile telephones described in Attachments A-1 to A-4 include the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the Target Devices for evidence described below.

The evidence to be seized from the mobile telephones will be electronic records, communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data limited to the time period of October 11, 2024, up to and including November 11, 2024, and is limited to the following:

a. tending to reflect planning of and/or involvement in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

b. tending to identify other facilities, storage devices, or services such as email addresses, IP addresses, and/or phone numbers that may contain electronic evidence tending to indicate efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

d. tending to identify travel to or presence at locations involved in efforts to smuggle illegal aliens into and through the United States;

e. tending to identify the user of, or persons with control over or access to, the Target Device;

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which is evidence of the transportation of illegal aliens in violation of 8 U.S.C. § 1324.

# AFFIDAVIT

I, Fernando Quiroz, United States Border Patrol Agent, having been duly sworn, depose and state as follows:

## INTRODUCTION

1. I submit this affidavit in support of an application for warrant(s) to search the following electronic device(s):

**A-1:**   Black Samsung Cellphone
Model: Unknown
Seized as FP& F: 2025255400002001 Item: 005
Seized from Jessica Concepcion RAMOS-Santiago
**(Target Device #1)**

**A-2:**   White Maxon Cellphone
Model: Unknown
Seized as FP& F: 2025255400002001 Item: 006
Seized from Veronica MARTINEZ-Hernandez
**(Target Device #2)**

**A-3:**   Purple Apple iPhone
Model: Unknown
Seized as FP& F: 2025255400002001 Item: 007
Seized from Emilio Isaac LOPEZ
**(Target Device #3)**

**A-4:**   Red Apple iPhone
Model: Unknown
Seized as FP& F: 2025255400002001 Item: 008
Seized from Emilio Isaac LOPEZ
**(Target Device #4)**

as further described in Attachments A-1 to A-4, and to seize evidence of a crime, specifically, violations of Title 8, United States Code, Section 1324 (Alien Smuggling), as further described in Attachment B.

2. The requested warrant relates to the investigation and prosecution of Emilio Isaac LOPEZ for transportation of illegal aliens Jessica Concepcion RAMOS-Santiago (RAMOS) and Veronica MARTINEZ-Hernandez (MARTINEZ) (collectively, the

1

"Material Witnesses") in violation of Title 8 U.S.C. § 1324 within the Southern District of California. The Target Devices were seized from LOPEZ and the Material Witnesses on or about November 10, 2024, incident to the arrest of LOPEZ and the Material Witnesses. The Target Devices are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

3. Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth every fact that I, or others, have learned during the course of this investigation. The information contained in this Affidavit is based upon my personal observations and knowledge, my review of various official reports, and upon conversations with other Border Patrol Agents. Dates and times are approximate.

## EXPERIENCE AND TRAINING

4. I am a United States Border Patrol Agent with the Department of Homeland Security, Customs and Border Protection, United States Border Patrol ("USBP"). I have been employed as a full-time, sworn federal BPA with the USBP since June 4, 2007, and graduated from the USBP Basic Border Patrol Training Academy located in Artesia, New Mexico. The Border Patrol Academy curriculum covers specialized training in the Immigration and Naturalization Act (INA), training in Titles 8, 18, 19, 21 and 31 of the United States Code, criminal law, and statutory authority.

5. I am currently assigned to the El Centro Sector Prosecutions Unit. The El Centro Sector Prosecutions Unit is tasked with the responsibility of investigating and prosecuting alien smuggling organizations that utilize the Southern and Central Districts of California as an operational corridor. In the course of my duties as a Border Patrol Agent, I investigate and prepare cases for prosecution against persons involved in the inducement of the illegal entry of undocumented aliens into the United States; the smuggling of undocumented aliens into the United States; and the transportation and harboring of undocumented aliens within the United States.

6. Through the course of my training, investigations, and conversations with other law enforcement personnel, I have gained a working knowledge of the operational habits of alien smugglers and alien transporters, those who attempt to smuggle aliens into the United States from Mexico and transport them throughout the Southern District of California. I am aware that it is a common practice for alien smugglers to work in concert with other individuals and to do so by utilizing cellular telephones to maintain communications with co-conspirators and/or illegal aliens in order to further their criminal activities. Because they are mobile, the use of cellular telephones permits alien smugglers and transporters to easily carry out various tasks related to their smuggling activities, including, *e.g.*, remotely monitoring the progress of the aliens while the aliens are in transit, providing instructions to transporters, guiding aliens to specific pick up locations, warning accomplices about law enforcement activity in the area and the status of check-point operations, and communicating with co-conspirators who guide aliens, coordinate drop off locations, and/or operate alien stash houses.

7. The smuggling of aliens generates many types of evidence, including, but not limited to, cellular phone-related evidence such as voicemail messages referring to the arrangements of travel, names, photographs, text messaging (via SMS or other applications), and phone numbers of co-conspirators and illegal aliens. For example, drivers and passengers responsible for transporting illegal aliens are typically in telephonic contact with co-conspirators immediately prior to and/or following the crossing of the illegal aliens at the border, at which time they receive instructions, including where to pick-up the illegal aliens for transportation into the United States and where to take the illegal aliens after crossing into the United States. These communications may also include locations for delivery to stash houses and/or sponsors. Illegal aliens also are typically in telephonic contact with co-conspirators prior to and following their crossing in order to make smuggling arrangements, receive instructions, and report their locations after crossing.

8. Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I know that cellular telephones (including their Subscriber Identity Module (SIM) card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. In particular, in my experience and consultation with law enforcement officers experienced in alien smuggling investigations, I am aware that individuals engaged in alien smuggling may store photos and videos on their cell phones that reflect or show co-conspirators and associates engaged in alien smuggling, as well as images and videos with geo-location data identifying alien smuggling transportation routes, and communications to and from recruiters and organizers.

9. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones may yield evidence:

   a. tending to indicate efforts to smuggle aliens from Mexico into the United States;

   b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate alien smuggling and transportation of smuggled aliens;

   c. tending to identify co-conspirators, criminal associates, or others involved in alien smuggling, or transportation of smuggled aliens;

   d. tending to identify travel to or presence at locations involved in the smuggling, transportation, or harboring of illegal aliens, such as stash houses, load houses, or delivery points;

   e. tending to identify the user of, or persons with control over or access to, the Target Device(s); and/or

    f.    tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

10. On November 10, 2024, U.S. Border Patrol Agents (BPA) assigned to the Calexico Border Patrol Station's Anti-Smuggling Unit (ASU) were conducting surveillance within the Calexico Border Patrol Station's area of responsibility (AOR). Some of the BPAs were dressed in plain clothes and operating unmarked service vehicles in an attempt to blend in with the public and covertly search for criminal activity, and some agents were in fully marked Border Patrol vehicles. The ASU investigates/targets alien smuggling and all other illicit cross-border activity in southern California's Imperial Valley and the surrounding areas.

11. ASU BPAs were focused on the Calexico Border Patrol Station's "East Desert" AOR, within the El Centro Border Patrol Sector, for suspicious activity. This area of the border region consists of uninhabited desert with Interstate 8 (I-8) running through it. Interstate 8 is approximately .5 miles north of the United States/ Mexico International Boundary Fence (IBF), approximately 32 miles east of Calexico, California West Port of Entry. The main east to west road in this area is I-8 which parallels the international border. This area is consistently used by smugglers to smuggle illegal aliens further into the United States due to its proximity to the border and quick access to the highway.

12. At approximately 3:30 pm., National Guard soldiers assigned to a mobile video surveillance system at "Swingles" informed BPAs in the field, via service radio, that they observed suspected illegal aliens (IAs) climbing the north side IBF near Drop 1, going south in Mexico. At that time, the ASU BPAs positioned themselves in this area and began conducting surveillance. At approximately 3:46 pm., BPA Schwantner, who was assigned to the Calexico Remote Video Surveillance System (RVSS) room, informed the ASU BPAPs of two suspected IAs that were southwest of Drop 1, approaching the vehicle barriers south side of I-8's eastbound lanes. BPA Chrisley was parked on the Gordons Well Road overpass conducting surveillance, and at approximately 4:07 pm., BPA Chrisley

5

observed a small white sports utility vehicle (SUV) stopping near the IA's location. BPA Schwantner informed ASU BPAs in the area that the IA's were getting up and moving north towards a vehicle that stopped near their location. BPA Schwantner then informed ASU BPAs that the IAs were boarding a white SUV or crossover, and that the vehicle was merging back to the eastbound lanes of I-8.

13. BPA Chrisley was able to catch up to the SUV, later identified as a white Nissan Murano bearing Arizona license plates. As the White Nissan Murano approached the Midway campground on I-8, BPA Chrisley relayed the license plate information to El Centro Sector Communications (KAK 840). BPA Chrisley continued to follow the white Nissan Murano. At 4:11 pm., BPA Duarte who was driving a fully marked service vehicle and wearing full rough duty uniform and BPA Chrisley, activated their emergency lights and sirens to signal the white Nissan Murano to stop as they passed the Greys well Road exit on I-8.

14. The White Nissan Murano yielded and came to a complete stop approximately half of a mile east of the Greys Well Road overpass on I-8. BPA Chrisley approached the driver's side of the White Nissan Murano and identified himself as the U.S. Border Patrol Agent. For his safety and the safety of all occupants inside the Murano, BPA Chrisley asked the driver if there were any weapons inside the vehicle. The driver who was later identified as Emilio Isaac LOPEZ (LOPEZ), admitted being in possession of a Glock handgun and told BPA Chrisley that it was located under the driver's seat. BPA Chrisley instructed LOPEZ to not move, safely escorted LOPEZ out of the White Nissan Murano, and secured him at the front of BPA Duarte's service vehicle. BPA Chrisley then asked LOPEZ if he knew why he was being stopped, LOPEZ replied by stating "no". BPA Chrisley notified LOPEZ of why he was being stopped. BPA Chrisley conducted an immigration inspection of LOPEZ and established LOPEZ to be a United States Citizen. LOPEZ was handcuffed and secured inside BPA Duarte's service vehicle.

15. At the same time, BPA Duarte approached the White Nissan Murano from the driver's side, opened the rear door and observed two women laying down in the back seat.

BPA Duarte noticed the two women were visibly nervous, and breathing heavily. BPA Duarte then conducted an immigration inspection on the two occupants, later identified as Jessica RAMOS-Santiago (RAMOS) and Veronica MARTINEZ-Hernandez (MARTINEZ). Both RAMOS and MARTINEZ admitted to being Citizens of Mexico, and entering illegally into the U.S. BPA Chrisley assisted by escorting both RAMOS and MARTINEZ to BPA Palmer's service vehicle. BPA Duarte searched and located small maroon colored pouch under the driver's seat. Inside of the pouch was a brown Glock 27 handgun and one high-capacity magazine loaded with twelve .40 caliber ammunition. BPA Chrisley contacted KAK 840 to request record checks on the handgun serial number. Record checks on the Glock 27 resulted with a negative record on file. All individuals were arrested and transported to the Calexico Border Patrol Station for further questioning and processing.

  16. Material Witness Jessica Concepcion RAMOS- Santiago (RAMOS) states she is a citizen of Mexico. RAMOS stated she did not have the legal documents to be present in the United States (US). RAMOS stated her intended destination was Los Angeles, California. RAMOS stated her friend from back home made the arrangements on her behalf to be smuggled into the U.S. Ramos stated she was going to pay the smugglers $ 14,000 USD Dollars once she arrived at his intended destination. RAMOS stated that the smuggler told them to run straight north to the highway and wait for a white vehicle to pick them up. Ramos stated a white vehicle pulled over on the shoulder of the highway, and she boarded the vehicle and laid on the rear floorboard.

  17. Material Witness Veronica MARTINEZ-Hernandez (MARTINEZ) stated she is a citizen of Mexico. MARTINEZ stated she did not have the legal documents to be present in the U.S. MARTINEZ stated her intended destination was Los Angeles, California. MARTINEZ stated her cousin made the arrangements on her behalf to be smuggled into the U.S. MARTINEZ stated she was going to pay the smugglers $ 250,000 Mexican pesos once she arrived at his intended destination. MARTINEZ stated the smuggler told them to run straight north to the highway. MARTINEZ stated that they

waited approximately five minutes south of the highway. MARTINEZ stated a white vehicle pulled over on the shoulder of the highway, RAMOS opened the rear passenger door and both RAMOS and Martinez boarded the vehicle and laid on the rear floorboard.

18. During a search incident to arrest of LOPEZ and the Material Witnesses, three cellphones were found on the front passenger seat: a black Samsung cellphone (Target Device #1) that was claimed by Material Witness RAMOS; a white Maxon cellphone that was claimed by Material Witness MARTINEZ; and a purple Apple iPhone (Target Device #3) that was claimed by LOPEZ. A red Apple iPhone (Target Device #4) was found in the center console of the Murano by BPA Donahue and LOPEZ claimed ownership of this cellphone. All cellphones were seized as evidence.

19. I am aware that smuggling conspiracies require planning to successfully evade detection by law enforcement. In my professional training and experience, this may require planning and coordination in the days and weeks prior to the event. Additionally, co-conspirators are often unaware of the subject's arrest and will continue to attempt to communicate with the subject after the arrest to determine their whereabouts. Given this, I respectfully request permission to search the Target Devices for data beginning on October 11, 2024, up to and including November 11, 2024, the day after the arrest of LOPEZ and the Material Witnesses.

## METHODOLOGY

20. It is not possible to determine merely by knowing the cellular telephone's make, model and serial number, the nature, and types of services to which the device is subscribed, and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants, and have functions such as calendars and full address books, and can be minicomputers allowing for electronic mail services, web services, and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all the data contained on the device. For that reason, the device may only be powered in a

secure environment or, if possible, started in "flight mode," which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and, instead, store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

21. Following the issuance of this warrant, a case agent familiar with the investigation will collect the Target Devices and subject them to analysis. All forensic analysis of the data contained within the telephones, and their memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

22. Based on the foregoing, identifying, and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this Court.

//
//
//
//
//
//
//

# CONCLUSION

23. Based on all the facts and circumstances described above, I believe that probable cause exists to conclude that LOPEZ, and the Material Witnesses used the Target Devices to facilitate the offense of alien smuggling. The Target Devices likely were used to facilitate the offense by transmitting and storing data, specifically that described in Attachment B, which constitutes evidence of violations of Title 8, United States Code, Section 1324. I also believe that probable cause exists to believe that evidence of illegal activity committed by LOPEZ, the Material Witnesses, and others continues to exist on the Target Devices. Therefore, I respectfully request that the Court issue this warrant.

I swear the foregoing is true and correct to the best of my knowledge and belief.

*Fernando Quiroz*
Fernando Quiroz Border Patrol Agent
United States Border Patrol

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 14th day of November, 2024.

_____3:04 p.m._____
HON. LUPE RODRIGUEZ, JR.
UNITED STATES MAGISTRATE JUDGE

10

## ATTACHMENT A-1
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-1:**        Black Samsung Cellphone
            Model: Unknown
            Seized as FP& F: 2025255400002001 Item: 005
            Seized from Jessica Concepcion RAMOS-Santiago
            **(Target Device #1)**



The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## ATTACHMENT A-2
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-2:**      White Maxon Cellphone
Model: Unknown
Seized as FP& F: 2025255400002001 Item: 006
Seized from Veronica MARTINEZ-Hernandez
**(Target Device #2)**



The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## ATTACHMENT A-3
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-3:**        Purple Apple iPhone
Model: Unknown
Seized as FP& F: 2025255400002001 Item: 007
Seized from Emilio Isaac LOPEZ
**(Target Device #3)**



The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## ATTACHMENT A-4
PROPERTY TO BE SEARCHED

The following property is to be searched:

<u>A-4:</u>     Red Apple iPhone
            Model: Unknown
            Seized as FP& F: 2025255400002001 Item: 008
            Seized from Emilio Isaac LOPEZ
            **(Target Device #4)**



The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## ATTACHMENT B

### ITEMS TO BE SEIZED

Authorization to search the mobile telephones described in Attachments A-1 to A-4 include the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the Target Devices for evidence described below.

The evidence to be seized from the mobile telephones will be electronic records, communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data limited to the time period of October 11, 2024, up to and including November 11, 2024, and is limited to the following:

a. tending to reflect planning of and/or involvement in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

b. tending to identify other facilities, storage devices, or services such as email addresses, IP addresses, and/or phone numbers that may contain electronic evidence tending to indicate efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

d. tending to identify travel to or presence at locations involved in efforts to smuggle illegal aliens into and through the United States;

e. tending to identify the user of, or persons with control over or access to, the Target Device;

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which is evidence of the transportation of illegal aliens in violation of 8 U.S.C. § 1324.